In the Matter of the Application of the BOARD OF SUPERVISORS OF THE COUNTY OF HERKIMER, Plaintiff, to Acquire Lands for Highway Purposes under the Highway Law, of GUY R. BEARDSLEE, ETHEL BEARDSLEE, His Wife, and HENRY SMITH, Defendants.

Supreme Court, Herkimer County, March 31, 1931.

*George H. Bunce*, for the plaintiff.

*George H. Hall*, for the defendants.

DOWLING, J. On the 8th of September, 1930, plaintiff applied to this court for judgment condemning 5.743 acres of the Beardslee

farm, owned by the defendant Guy R. Beardslee, and for the appointment of commissioners of appraisal to ascertain and determine the compensation to be paid to the owner of said land and to all persons interested therein. The prayer of the plaintiff was unopposed, resulting in the granting and entry of judgment of condemnation and the appointment of Myron M. Crandall, a lawyer of West Winfield, Herkimer county, N. Y., Dr. Wm. H. Squires, a member of the faculty of Hamilton College, Clinton, N. Y., and Rev. George H. MacNish, Cleveland, Oswego county, N. Y., as commissioners.

The commissioners organized, gave the notice required by statute, viewed the property, took the constitutional oath of office and designated October 25, 1930, at the court house in the village of Herkimer, Herkimer county, N. Y., as the date and place of hearing.

On the designated day they were attended by the parties and their attorneys, and between that date and the 15th of January, 1931, they held several hearings, taking 320 pages of testimony, together with certain documentary evidence relating to the matters in issue.

After the close of the testimony the commissioners proceeded to assess, allow and state the amount of damages to be sustained by the owners of the property in question, and on the 7th day of February, 1931, they reached an unanimous decision and made a report in writing, signed and filed it in the clerk's office of the county of Herkimer, N. Y., and thereupon made application to this court on the 9th of March. 1931, for a confirmation of their said report.

On the return date of said application the defendants appeared and objected to the confirmation of said report, and excepted in writing to the findings and conclusions of the commissioners as contained therein. Said exceptions, in substance, are as follows:

(a) To the finding that the market value of the entire premises was $73,941.13, and to the market value of the remainder, after deducting the portion appropriated, as $72,792.53; to the market value of the 5.743 acres so appropriated, as $1,148.60; to the sum of $5,610 assessed as consequential damages.

(b) That the commissioners failed to find and report that the land appropriated was part of an area of real property that was used as a country estate and country home.

(c) That the sum of $6,768.74, total damages assessed and awarded, is inadequate.

(d) That the commissioners failed to report the grounds of their decision in detail.

(e) That the commissioners failed to report the element of damages caused by the appropriation in detail.

(f) That the commissioners failed to report the method of computation adopted by them in making their award.

(g) That the award of damages is not a legal award.

(h) That the commissioners failed to report the various uses made of the real property involved.

(i) That the commissioners failed to report as elements of damage that the property was used as a country estate and home; that the land appropriated would be used for public highway purposes; that a high embankment will be constructed on the land appropriated; that the construction of such embankment will interfere with private drainage, private sewer and drainage systems, the natural spring on the land appropriated; that the construction of the highway embankment will interfere with crops, standing timber, pasture, private and public roads, concrete flush basin, and equipment, and will cause flooding; that a bridge with a pier and abutments will be constructed over East Canada creek on defendants' real property; that such bridge will cause flooding on defendants' real property; that the construction of a highway will produce noise, dirt and confusion; that defendants' privacy and convenience will be damaged by the appropriation; that it will be necessary to fence the land appropriated at the defendants' expense; that the construction of a highway will damage the appearance of the remaining property; that the marketability and usefulness of the whole property will be damaged by the appropriation.

(j) That the commission failed to report whether in considering the damages caused to the remainder of the land not taken by the appropriation, they took into consideration the effect of the appropriation upon the whole of the remainder, its advantages and disadvantages, benefits and injuries, and whether the result is beneficial.

(k) That the court cannot conscientiously determine the legality and adequacy of the award from the said report.

Section 152, article 6, of the Highway Law (as amd. by Laws of 1927, chap. 88) provides as follows: " *They [meaning the commissioners] shall thereafter make and sign a report in writing, in which they shall assess, allow and state the amount of damages to be sustained by the owners of the several lots, pieces or parcels of land taken for the purposes aforesaid.* * * * *After said report shall have been completed and filed as aforesaid, the commissioners of appraisal shall, after publishing a notice in like manner as that provided in section one hundred and fifty-two, apply* * * * *to the supreme court, at a special term thereof to be held in the judicial department in which said county is located, to have the said report confirmed. If no*

*sufficient reason to the contrary shall appear, the court shall confirm said report. Otherwise it may refer the same back to the said commissioners of appraisal for revision or correction."*

Page 5 of the report reads as follows: " *That defendants' measure of damages is the difference between the fair market value of the entire land before the appropriation was made and the value of the remainder of the land after the portion taken was appropriated.*

" *That defendants are entitled to recover the fair market value of the premises actually taken, and also any damages resulting to the residue, including those which will be sustained by reason of the use to which the portion taken is to be put by the petitioner."*

The rules so adopted are correct. ( *N. Y. C. R. R. Co.* v. *Maloney,* 234 N. Y. 208, 218; *County of Erie* v. *Fridenberg,* 221 id. 389, 393.)

Commenting upon the duties of commissioners of appraisal in condemnation proceedings, the Court of Appeals, in *South Buffalo R. R. Co.* v. *Kirkover* (176 N. Y. 301), said (at p. 306): " *Considering the principle involved, unembarrassed by legal decisions, it is reasonable that where the state, in the exercise of the right of eminent domain, sees fit to take the property of the citizen without his consent, paying therefor such damages as are the result of the taking, the commissioners in the condemnation proceedings should not only be permitted but required to award the owner a sum that will fully indemnify him as to those proximate and consequential damages flowing from this act of sovereign power.*

" *The exercise of the right of eminent domain is allowed upon the theory that while the taking of property may greatly inconvenience the individual owners affected, it is in the interest and to promote the welfare of the general public. This being so, there is no reason why the citizen, whose land is taken in invitum, should suffer any financial loss that may be prevented by awarding him proximate and consequential damages. It may well be that in every case there are remote damages that the citizen, under the circumstances, must suffer."*

The exceptions of the defendants point to the contention that the award of the commissioners does not fully indemnify them as to the proximate and consequential damages which they suffered herein.

The tract of land from which the condemned property was carved consists of 350 acres. The title to said farm has been in the Beardslee family since 1795, without interruption. The farm has a frontage of one mile on the Mohawk river and a mile on East Canada creek. It has a great spread of gardens and buildings, sewer, drainage and electric system, far more than any ordinary farm has or needs. A dairy of sixty-eight cows is maintained upon

said farm. The main dwelling house stands upon an elevation and commands a view generally of the entire farm. The new highway cuts the farm almost in two. It passes over flat lands. The plans indicate that there will be a fill, ranging from eight to eleven feet in height, and approximately 3,800 feet long. The plans make no provision for a cattle pass under the proposed highway, or for continuing present sewage and drainage systems under said highway. The plaintiff offered evidence of an appropriation by the board of supervisors of Herkimer county and some evidence of the consent by the State for the construction of a cattle pass under said highway, but said evidence was excluded by the commissioners. If plaintiff can prove that the State has agreed to amend its plans and has agreed to install a suitable cattle pass, I think the evidence is competent. Such agreement must come, however, from competent authority and be in such form that defendants will be protected in the event that the State should default in performance thereof. The commissioners could determine the damage, if any, suffered through lack of a cattle pass and award defendants that amount depending upon the State constructing such pass.

On page 8 of the report the commissioners find as follows: " *The value of the land actually taken has been considered separately from the damage done to the remainder. The commissioners do together to the best of their ability, hereby ascertain, determine and decide upon the following grounds and basis of value, namely:*

| | |
|---|---|
| Fair market value of entire land before the appropriation was made........................... | $73,941 13 |
| Fair market value of the remainder of the land after the portion taken was appropriated............ | 72,792 53 |
| Fair market value of 5.743 acres of land actually appropriated................................ | 1,148 60 |
| Amount of damages resulting to the residue from such appropriation........................... | 5,610 00 |
| Three months' interest......................... | 10 14 " |

The items constituting consequential damages are not specified; hence, it is impossible for this court to determine just what elements were considered by the commissioners, nor do they indicate the rule adopted by them in determining the consequential damages. The defendants are entitled to have the elements of consequential damages itemized and the amount of damages allowed placed upon each item, also the rule by which the commissioners determined the value of each item. (*Matter of Board of Water Commissioners,*

55 App. Div. 77, 79; *Waterford Electric Light Co.* v. *Reed,* 103 id. 103, 106, 107; *Matter of City of Brooklyn,* 143 N. Y. 596, 600, referred to in 55 App. Div. 79, *supra; Condemnation of Lands in Village of Port Byron,* 136 Misc. 148, 151.)

In the absence of detailed information as to the items of consequential damages considered by the commissioners, this court is unable to determine whether the allowance of $5,610 for consequential damages is adequate or inadequate.

The testimony indicates the following elements were offered for the consideration of the commissioners, as bearing upon consequential damages, viz.: The destruction of an ancient spring located within the condemned area and the flowage from another spring cut off by the appropriation; the destruction of drainage and sewage pipes and of catch basins; the loss of the right to empty sewage and drainage into a certain pond cut off by the appropriation; the possible flooding of lands due to the construction of bridge abutments; the value of timber standing on land appropriated; failure to provide for cattle pass; the fencing of right of way; hauling produce and driving stock across proposed highway; damage to land isolated by road embankment; the damage to buildings and structures and general depreciation of the property.

I think the learned commissioners erred in considering defendants' land as a dairy farm only. The evidence is to the effect that most of the farm lands have been in the possession of Mr. Beardslee, his father, grandfather and great-grandfather since 1795; that a tremendous amount of money has been expended in the construction of buildings, sewage, drainage and electric light systems and in gardens and shrubbery and the like; that Mr. Beardslee and his ancestors have used the property, not merely as a farm, but as an ancestral home and a country estate; that dairying and farming, so far as Mr. Beardslee is concerned, are only incidental, it appearing that out of the income of the farm he receives only $500 a year, barely enough to pay the taxes. Mr. Beardslee is a man of education and refinement and has enjoyed the attractive setting of his ancestral home.

Commissioners of appraisal have no right to disregard the oral evidence produced before them and rely entirely upon the impressions gained by viewing the premises. They must consider the oral evidence in connection with knowledge acquired by them in viewing the premises. (*Matter of City of New York,* 198 N. Y. 84, 92.) They are not, however, restricted to " a choice between the estimates of warring experts and are in no sense bound by their opinions." (*New York Central & H. R. R. R. Co.* v. *Newbold,* 166 App. Div. 193, 195.)

The throwing of this " Chinese wall " across defendants' farm certainly will not improve its scenic aspect. The continued presence of this embankment cannot be other than an eyesore to a man of Mr. Beardslee's culture. The defendants were entitled to have this considered as a possible element of damage. (*N. Y. C. R. R. Co.* v. *Maloney, supra,* 218; *N. Y. C. R. R. Co.* v. *Newbold, supra,* 194; *Matter of Opening Second & Third Streets,* 98 Misc. 716, 719, 721.)

Without intimating any opinion upon the merits at this time, the court remits the report to the commissioners, with directions to reconvene forthwith, and to make a supplemental report setting forth in detail the grounds of their decision and the rule adopted by them in determining consequential damages, the elements considered by them in applying the rule, and the method of computation of consequential damages; also the damages, if any, considering the property as an ancestral home and country estate, and the damages, if any, for any element not heretofore considered by them.

The commission may call for and receive any further testimony it may desire to enable it to comply with this order.

Ordered accordingly.